## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINE BARNHART,<br><br>　　　　　　Plaintiff<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of the Social Security<br>Administration<br><br>　　　　　　Defendant | CIVIL ACTION NO. 1:14-CV-00767<br><br>(MEHALCHICK, M.J.) |

## MEMORANDUM OPINION

This is an action brought under Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. § 405(g) , 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 16, Doc. 17). For the reasons expressed herein, it is ordered that the decision of the Commissioner be **VACATED** and **REMANDED** for a new administrative hearing.

## I.　BACKGROUND & PROCEDURAL HISTORY

On July 17, 2010, Plaintiff, Christine Barnhart ("Barnhart") protectively filed a Title II application for DIB. On August 23, 2010, Barnhart protectively filed a Title XVI application for SSI. In both applications, Barnhart alleged that she became unable to work on January 1, 2010,

due to her alleged impairments of heart disease, diabetes, depression, and anxiety. (Admin Tr. 202, Doc. 10-6 p. 6). Her claims were denied initially on February 9, 2011. Following this denial, Barnhart sought and was granted an opportunity to have her claims re-evaluated after an administrative hearing.

On September 27, 2012, Barnhart, with the assistance of counsel, appeared and testified at an administrative hearing before Administrative Law Judge ("ALJ") Randy Riley in Harrisburg, Pennsylvania. Impartial Vocational Expert ("VE") Paul A. Anderson also appeared and testified at the hearing.

Barnhart testified that as of the date of her hearing, she was a 39 year old mother of one, and resided in an apartment with her husband and young daughter. (Admin Tr. 36; Doc. 10-2 p. 37). Barnhart reported that she could read and write English, completed high school, attained an associate's degree in a paralegal program and was a certified bartender. *Id.* On June 7, 2010, Barnhart underwent a coronary artery bypass graft. (Admin Tr. 37; Doc. 10-2 p. 38). Barnhart did attempt to work as a bartender from April 2011 to December 2011 (after her alleged onset date), but her brief return to the workforce was complicated by continuing health problems and the ALJ determined that her earnings during this period did not reach the level of substantial gainful activity. Barnhart reported that during this brief period of employment she had to be rushed from work to the emergency room on two occasions. *Id.* Despite these continuing problems, Barnhart remains capable of showering herself, cooking "sometimes," picking up items at the store, folding laundry, driving (when absolutely necessary), and caring for her daughter during the day while her husband works. (Admin Tr. 38; Doc. 10-2 p. 39). Barnhart also testified that, due to the combination of her impairments she is unable to bend, climb a full

flight of stairs, climb ladders, walk for more than one block without resting, stand more than two minutes at one time, or sit for more than ten minutes at one time. (Admin Tr. 39-40; Doc. 10-2 pp. 40-41). Barnhart reported that she experiences pain in her upper and lower back, shoulders, neck and wrists due to endometriosis and fibromyalgia. (Admin Tr. 42, 44; Doc. 10-2 p. 43, 45). Barnhart also suffers from insulin dependent diabetes and experiences neuropathy in her hands and feet "a couple" times per week. (Admin Tr. 44-45; Doc. 10-2 pp. 45-46). For the time being, Barnhart reported that she is not a candidate for surgery to correct her endometriosis. (Admin Tr. 43-44; Doc. 10-2 pp. 44-45). Barnhart admits, however, that once she has several new stents placed in her heart her doctors will re-evaluate whether this surgery is advisable. *Id.*

With respect to mental impairments, Barnhart testified that she suffers from post-traumatic stress disorder ("PTSD"), depression, and anxiety. (Admin Tr. 46; Doc. 10-1 p. 47). As a result of post-traumatic stress disorder Barnhart asserts that she has difficulty gripping objects, and has been advised against lifting items heavier than a one-gallon jug of milk or bending down to retrieve dropped items from the ground. (Admin Tr. 44; Doc. 10-2 p. 45) Barnhart reported that she experiences nightmares and flashbacks at an unpredictable frequency. (Admin Tr. 46; Doc. 10-2 p. 47). In addition, due to her anxiety and depression Barnhart suffers from low energy, lack of interest in activities that she previously enjoyed, dislikes being around people or in situations where she feels "confined." (Admin Tr. 47; Doc. 10-2 p. 48).

Additionally, Barnhart reported numerous medication side-effects, including extreme fatigue, insomnia, dizziness, nausea, vomiting, and migraines due to a Leupron Depot

injection. (Admin Tr. 41-42; Doc. 10-2 pp. 42-43). Barnhart is also prescribed Oxycontin (for pain), Plavix and Ranexa (for her heart condition). *Id.*

On October 16, 2012, the ALJ denied Barnhart's claims in a written decision. (Admin Tr. 11-24; Doc. 10-2 pp. 12-25). Thereafter, Barnhart sought review of her claims by the Appeals Council. Together with her request for review, Barnhart submitted additional medical evidence that was not before the ALJ when he issued his decision. (Admin Tr. 1246-53; Doc. 10-21 pp. 72-79). On February 26, 2014, the Appeals Council denied Barnhart's request for review, thus making the ALJ's October 2012 decision the final decision of the Commissioner subject to judicial review by this Court. (Admin Tr. 1-5; Doc. 10-2 pp. 2-6).

Barnhart initiated this action, seeking review of the Commissioner's final decision denying her claims, by filing a complaint in this Court on April 21, 2014. (Doc. 1). In light of several alleged errors made by the ALJ, Barnhart requests that this Court enter judgment reversing the final decision of the Commissioner without remand or, in the alternative, vacate the Commission's decision and remand for a new administrative hearing. On June 25, 2014, the Commissioner filed an Answer, in which she contends that the ALJ's decision is free of reversible error and is supported by substantial evidence. (Doc. 9). Together with her answer, the Commissioner filed a copy of the administrative record. (Doc. 10). Though this record includes evidence that was not before the ALJ when he rendered his decision, this Court's review is limited to whether the ALJ's decision is supported by substantial evidence, based on the evidence that was before him. *See Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001)(agreeing that "although evidence considered by the Appeals Council is part of the administrative record on appeal, it cannot be considered by the District Court making its

substantial evidence review."). Thus, the Court has not considered the evidence Barnhart submitted to the Appeals Council in its determination of whether the ALJ's decision is supported by substantial evidence.

Having been fully briefed by the parties, this matter is now ripe for disposition. (Doc. 11, Doc. 12, Doc. 13).

## II.   STANDARD OF REVIEW

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators – the ALJ and this Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §405(g); 42 U.S.C.§1382c(a)(3)(A); *see also* 20 C.F.R. §404.1505(a); 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §405(g); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §404.1505(a); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a); 20 C.F.R. §416.920(a). Under this framework, the ALJ must sequentially determine: (1) whether the claimant is engaged in

substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520; 20 C.F.R. §416.920. Between steps three and four, the ALJ must also assess a claimant's Residual Functional Capacity ("RFC"). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. §404.1545; 20 C.F.R. §416.945(a)(1); SSR 96-8p, 1996 WL 374184. In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2); 20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §423(d)(5); 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating the provisions of 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §404.1512; 20 C.F.R. §416.912; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); 20 C.F.R. §416.912(f); *Mason*, 994 F.2d at 1064.

Once a final decision is issued by the Commissioner, and that decision is appealed to this Court, our review of the Commissioner's final decision is limited to determining whether the findings of the final decision maker – the ALJ in this case – are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g)(sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200(3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536(M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason, 994 F.2d at 1064.* But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Barnhart is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D.Pa.

1981)("The Secretary's determination as to the status of a claim requires the correct application

of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990)(noting that

the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has

plenary review of all legal issues . . . .").

## III.   THE ALJ'S DECISION

In his decision, the ALJ proceeded through each step of the five step sequential

evaluation process. The ALJ also found that Barnhart met the insured status requirement of

Title II of the Act through September 30, 2013. At step one, the ALJ found that Barnhart did

not engage in any substantial gainful activity between January 1, 2010 and October 16, 2012.

(Admin Tr. 13; Doc. 10-2 p. 14). At step two the ALJ found that Barnhart suffers from the

medically determinable severe impairments of: coronary artery disease; gastroesophageal reflux

disease; diabetes mellitus; obesity; fibromyalgia; endometriosis; depression; and anxiety. *Id.*

The ALJ also found that Plaintiff suffers from the medically determinable but non-severe

migraine headaches, which have been successfully controlled with medication. (Admin Tr. 13;

Doc. 10-2 p. 15). At step three, the ALJ found that Barnhart does not have any single

impairment, or combination of impairments, that meets or medically equals one of the listed

impairments in 20 C.F.R. Part 404 Subpart P Appendix 1. *Id.*

Before proceeding to step four, the ALJ assessed Barnhart's RFC after assessing the

credibility of her testimony based on the requirements of 20 C.F.R. §§404.1529 and 416.929

and SSRs 96-4p and 96-7p, and weighing the medical and other evidence of record, including

several assessments by treating, examining, and non-examining medical sources and an

assessment by one non-medical source – Barnhart's husband – based on the requirements of

C.F.R. §§404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. (Admin Tr. 16; Doc. 10-2 p. 17).

On October 9, 2010, Barnhart's husband, Michael Barnhart, completed a function report in which he catalogued Barnhart's functional limitations. (Admin Tr. 209-17; Doc. 10-6 p. 13-21). Mr. Barnhart reported that Barnhart is able to care for herself and her daughter but is assisted by him, his sister-in-law, and his mother-in law when she is not feeling well. Mr. Barnhart also reported that his wife only goes out alone for brief trips, and experiences panic attacks and anxiety during such trips, and is fatigued when she returns home. He stated that Barnhart does not like being away from the home and is very uncomfortable outside the home unless accompanied by someone familiar. Mr. Barnhart reported that Barnhart is "okay with short instructions" but has difficulties in social settings and "quit many jobs" due to conflicts with her supervisors and co-workers.

On January 4, 2011, psychologist James J. Nolan examined Barnhart to evaluate her mental impairments. (Admin Tr. 336-39; Doc. 10-7 pp. 72-75). Based on his examination, Dr. Nolan noted that she was increasingly fearful of leaving her home except when accompanied by her husband or attending medical appointments. Dr. Nolan assessed that Barnhart's underlying anxiety symptoms restrict her ability to interact with others in both employment and social settings, but despite her symptoms she functioned fairly well within the confines of her home. Dr. Nolan diagnosed Barnhart with generalized anxiety disorder and opined that the constrictions on her activities due to anxiety combined with her medical problems contribute to her overtly depressed mood. Dr. Nolan also remarked that her social judgment is sometimes clouded by her irrational fears, and that Barnhart has only superficial insight. In an

accompanying medical source statement, Dr. Nolan found that, because work settings and social interactions evoke debilitating anxiety in Barnhart that keep her from performing satisfactorily and because maintaining an ordinary schedule and meeting the performance demands arouse her levels that compromise her performance, Barnhart had marked restriction to her ability: to carry out detailed instructions; interact appropriately with supervisors; interact appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting. Dr. Nolan also opined that Barnhart had marked restrictions to her abilities to interact appropriately with the public and make judgments on simple work-related decisions.

In January 2011, psychologist Elizabeth Hoffman completed a mental RFC assessment and Psychiatric Review Technique (PRT) form without examining Barnhart. (Admin Tr. 340-56; Doc. 10-7 pp. 76-92). Dr. Hoffman opined that the medical evidence established medically determinable mental impairments due to depressive disorder and generalized anxiety disorder. Dr. Hoffman opined that Barnhart could perform simple, routine, repetitive work in stable environment; make simple decisions; carry out very short and simple instructions; maintain regular attendance and be punctual. She did note, however, that Barnhart may have difficulty interacting with the public, coworkers, supervisors and responding to pressure in the work setting. Dr. Hoffman also opined that Dr. Nolan overestimated Barnhart's limitations in carrying out detailed instructions, and in the area of social functioning.

Drs. Cynthea Chuang and Michael Furbanice, who treated Barnhart on two occasions over a period of two years, completed a joint assessment of her physical RFC in September 2012. (Admin Tr. 1172-1175; Doc. 10-21 pp. 77-80). The doctors noted that Barnhart had been

diagnosed with diabetes type I, endometriosis, coronary artery disease ("CAD") status post coronary artery bypass graft ("CABG") surgery, hypertension, and hyperlipidemia ("HLD"). They also noted that Barnhart's prognosis was "unknown" and identified her symptoms as abdominal pain, nausea, vomiting, and constant fatigue. The doctors also opined that Barnhart could: sit at least six hours per eight hour day and stand less than two hours per eight hour day where Barnhart be permitted to shift positions at will; occasionally lift up to ten pounds and frequently lift less than ten pounds; frequently look down, turn her head left or right, look up, or hold her head in a static position; never crouch; rarely twist or stoop; reach handle, and feel without limitation; and, occasionally climb ladders or stairs. The doctors also noted that Barnhart would be absent more than four days per month due to her impairment and would require unscheduled fifteen minute breaks three to four times per workday.

In February 2011, Dr. Jessica Ward examined Barnhart and completed a narrative report and medical source statement that was commissioned by the Social Security Administration. (Admin Tr. 357-368; Doc. 10-7 pp. 93-104). Based on her examination of Plaintiff, Dr. Ward diagnosed Barnhart with coronary artery disease, diabetes, fibromyalgia, and anxiety and depression (by report). Dr. Ward noted that Barnhart continued to complain of chest pain lasting anywhere from several minutes to several hours at a time despite medical intervention, and complained of generalized all over joint pain. Dr. Ward also noted that Barnhart had a full range of motion in all joins, but was unable to perform an eye exam because Barnhart did not bring her glasses. In her accompanying medical source statement, Dr. Ward opined that Barnhart could: occasionally lift or carry up to ten pounds; stand up to one hour per

eight hour workday; sit without limitation; push or pull without limitation; and, occasionally bend, kneel, stoop, crouch, balance, and climb.

After consideration of the entire record, the ALJ found that Barnhart has the RFC to perform sedentary work, as defined by 20 C.F.R. §404.1567(a) and 20 C.F.R. §416.967(a), subject to the following additional limitations which further erode her occupational base:

> The claimant has the option to alternate sitting or standing at will. The claimant is limited to occasionally climbing stairs and balancing. The claimant can never climb ladders, stoop, kneel, crouch or bend. The claimant is limited to work that requires only simple routine repetitive tasks in a work environment free from fast paced production, which involves only simply work related decision and few, if any, work place changes. The claimant is limited to work that requires no interaction with the public, occasional interaction with co-workers, no tandem tasks, and occasional supervision.

(Admin Tr. 16; Doc. 10-2 p. 17).

The VE testified that Barnhart's past relevant work experience is limited to bartending and waitressing, and that both positions are semi-skilled and generally performed at a light exertion level. (Admin Tr. 50; Doc. 10-2 p. 51). He noted, however, that her past relevant work as a bartender was actually performed by Barnhart at a medium exertion level. *Id.* At step four, the ALJ found that, because she is limited to the performance of sedentary work and because her past relevant work is generally and actually performed at a higher exertion level, Barnhart is precluded from performing any of her past relevant work. (Admin Tr. 22, Doc. 10-2 p. 23).

The VE also testified that a hypothetical individual between the ages of 18 and 44, with a high school education and the same work experience as Barnhart and the above RFC could perform other work that exists in the national economy. The VE identified three representative occupations: nut sorter, DOT #521.687-086 (59,000 jobs nationally, 3,150 jobs state-wide, and 620 jobs locally); and surveillance system monitor, DOT # 379.367-010 (83,000 jobs nationally,

3,315 jobs in the state, and 540 jobs locally). (Admin Tr. 51-52; Doc. 10-2 pp. 52-53). Based on this information, the ALJ concluded at step five that Barnhart is able to perform other work which exists in the national economy and that this work exists in significant numbers. (Admin Tr. 23; Doc. 10-2 p. 24). Thus, the ALJ ultimately concluded that Barnhart was not under a disability, as it is defined by the Social Security Act, at any time between January 10, 2010, and October 16, 2012.

## IV.  ANALYSIS

Barnhart contends that the ALJ's treatment of the medical opinion evidence by Drs. Cynthia Chuang, James J. Nolan, and Jessica A. Ward, and the lay opinion by Barnhart's husband, Michael Barnhart is internally inconsistent, and is not in accordance with the Social Security Administrations well-established regulations governing the weighing of medical opinion evidence. (Doc. 11 pp. 17-22). In response, the Commissioner asserts that the ALJ reasonably assessed the opinion evidence of record. (Doc. 12 pp. 21-26). This Court's review of the record reveals that the ALJ's assessment of the opinions of Drs. Nolan and Ward is adequately explained and consistent with the applicable regulations.[1]   However, the Court

---

[1] With respect to Barnhart's contentions that the ALJ also failed to properly explain his treatment of certain aspects of Dr. Nolan's report and medical source statement, which were accorded "significant" weight, and his decision to accord Dr. Ward's report and medical source statement "limited" weight, the Court finds that Barnhart's arguments lack merit.

The "marked" limitations in following detailed instructions and in social interaction identified by Dr. Nolan are clearly accounted for in the ALJ's RFC assessment. (*See* Admin Tr. 16; Doc. 10-2 p. 17) ("The claimant is limited to work that requires only simple routine repetitive tasks … The claimant is limited to work that requires no interaction with the public, occasional interaction with co-workers, no tandem tasks, and occasional supervision.").

finds that the ALJ failed to provide any discussion of the attendance limitation in the RFC assessment submitted by Drs. Chuang and Furbanice, and that this oversight renders his assessment of Barnhart's credibility and RFC, and Mr. Barnhart's statements, suspect. [2]

The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including … symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and … physical or mental restrictions." 20 C.F.R. §404.1527(a)(2); 20 C.F.R. §416.927(a)(2). The Social Security Regulations define "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R §404.1513; 20 C.F.R. §416.913.

It is clearly within the ALJ's authority to choose whom to credit when the record contains conflicting medical opinions. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). However, since it is apparent that the ALJ "cannot reject evidence for no reason or the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)(*citing Mason*, 994 F.2d at 1066), the ALJ is also required to provide an explanation as to why opinion evidence by acceptable medical sources has been rejected so that a reviewing court can determine whether the reasons for rejection were proper. *Cotter v. Harris*, 642 F.2d 700, 704, 707 (3d Cir. 1981).

---

Further, the Court finds that the ALJ's decision to discount the physical RFC assessment by Dr. Ward, where that assessment conflicted with the opinion of Barnhart's treating sources, was proper and adequately explained.

[2] The ALJ found that Mr. Barnhart's statements in a function report was not "creditable for the same reasons the claimant's is not creditable." (Admin Tr. 22, Doc. 10-2 p. 23).

The Social Security Rulings and Regulations provide a framework under which medical opinion evidence must be considered. At the outset, the Court notes that the Social Security Regulations discuss the nature of an acceptable medical source's treatment relationship with the claimant in terms of three broad categories: treating; examining; and non-examining.[3]  The Social Security Regulations also express a clear preference for opinions by treating sources. *See Morales*, 225 F.3d at 317 ("a cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation over a prolonged period of time."). Pursuant to 20 C.F.R. §404.1527(c)(2) and 20 C.F.R. §416.927(c)(2):

> if [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight.

*Id.*; see also SSR 96-2p, 1996 WL 374188. Furthermore, finding that the medical opinion of a treating source is not entitled to controlling weight does not mean the opinion should be rejected. SSR 96-2p, 1996 WL 374188, at *1. In many cases, a treating source's medical opinion will be entitled to great deference even where it is found to be non-controlling. *Id.*

---

[3] A treating source is defined as an acceptable medical source who provides or has provided a claimant with medical treatment or evaluation, and who has or had an ingoing treatment relationship with the claimant. 20 C.F.R. §404.1502; 20 C.F.R. §416.902. A non-treating source is defined as an acceptable medical source that has examined the claimant but did not have an ongoing treatment relationship – like a consultative examiner. *Id.* A non-examining source is defined as an acceptable medical source that has not examined the claimant, but has provided an opinion in the case – like a state agency reviewing doctor. *Id.*

Where the ALJ finds that no treating source opinion is entitled to controlling weight, the regulations provide that the weight of all non-controlling opinions by treating, examining, and non-examining medical sources should be evaluated based on the following factors: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §404.1527(c); 20 C.F.R. §416.927(c). In addition, the ALJ should consider any other factors that tend to support or contradict the opinion that were brought to his or her attention. 20 C.F.R. §404.1527(c)(6); 20 C.F.R. § 416.927(c)(6).

Additionally, the ALJ *must* consider and *should* explain the weight accorded to opinions by medical professionals who are not "acceptable medical sources" – such as physicians' assistants or certified nurse practitioners – and non-medical sources, including opinions by a claimant's friend, neighbor, or family member. *See* 20 C.F.R. §§ 404.1512, 404.1513(d); 20 C.F.R. §§416.912, 416.913(d); SSR 06-03p, 2006 WL 2329939, at *6. These opinions are weighed using the same factors as medical opinions. SSR 06-03p, 2006 WL 2329939, at 4.  However, unlike opinions by acceptable medical sources, opinions by other medical sources and non-medical sources cannot establish the existence of impairment. *Id.* at *2. Instead, medical and non-medical opinions by sources who are not considered to be acceptable medical sources under the Social Security Regulations – like the one offered by Plaintiff's husband – may be used as benchmarks to assess the credibility of a claimant's testimony about the intensity, persistence, and limiting effects of his or her impairments or in evaluating the weight of opinions by "acceptable medical sources." *Id.* at *4 ("SSA's regulations include a provision that requires adjudicators to consider any other factors

brought to our attention …opinions, from 'other sources" – both medical sources and 'non-medical sources' – can be important in this regard.").

In his decision, the ALJ accorded significant weight to the physical residual functional capacity questionnaire completed jointly by Dr. Cynthia Chuang and Dr. Michael Furbanice – who both specialize in internal medicine. (Admin Tr. 20; Doc. 10-2 p. 21). Specifically, the ALJ noted that the doctors opined that:

> The claimant can stand or walk for less than two hours and can sit at least six hours. They found the claimant needs the option to shift positions at will from sitting, standing, or walking. The claimant needs three to four unscheduled breaks during an eight-hour workday. Also they found the claimant can frequently carry less than ten pounds, and can never carry twenty or more pounds. The claimant can frequently look down, turn her head left or right, look up, and hold her head in a stairs position. They found the claimant can never crouch or squat, she can rarely twist and stoop, and she can occasionally climb ladders or stairs.

(Admin Tr. 16; Doc. 10-2 p. 17). The Court notes, however, that the ALJ's decision makes no mention of the portion of the treating sources' opinion that predicts Barnhart will be absent more than four days each work due to her symptoms or medical treatment. At the hearing the VE testified that absences of four or more days per month would not be tolerated in any job. (Admin Tr. 54; Doc. 10-2 p. 55). The Court also notes that Barnhart admitted that she experienced significant difficulty maintaining attendance while working as a bartender between April 2011 and December 2011, which the ALJ failed to discuss.[4] (Admin Tr. 37; Doc. 10-2 p. 38).

---

[4] Barnhart admits that she worked as a bartender from April 2011 until December 2011. In his decision, the ALJ found that Barnhart's earnings while working as a bartender during this

Barnhart contends that because the ALJ accorded this opinion "significant weight" he could not decline to adopt the portion of this questionnaire finding that Barnhart would be absent an average of more than four days per month as a result of her impairments or treatment without explanation. (Doc. 11 p. 20; Doc. 13 p. 7). The Commissioner contends that it was entirely appropriate for the ALJ not to include all of the opined limitations in his RFC assessment. The Court agrees with the Commissioner's assertion that the ALJ is not bound to accept all aspects of an opinion where he also accords it "significant" weight. *Wilkinson v. Comm'r of Soc. Sec.*, 558 Fed. Appx. 254, 256 (3d Cir. 2014); (Doc. 12 p. 22-23). However, the Court cannot comment on whether it was entirely appropriate for the ALJ to discount this limitation in this case because the ALJ failed to provide any insight as to his reason for doing so. While the ALJ was certainly not required to credit the treating sources' predicted work absences, he was obligated to provide at least some explanation for his decision to do so, especially in this case where the limitation at issue is consistent with Barnhart's testimony and was deemed potentially work-preclusive by the VE. *See Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981)("an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests.").

---

period – which was after Barnhart's alleged onset date – did not reach the threshold of substantial gainful activity.

When describing her work as a bartender during this period, however, Barnhart asserted that she was absent from work more often than she was present. She reported that she was rushed from work to the emergency room on two occasions, and was absent for approximately five of the nine months she was employed.

The ALJ's failure to explain – or even discuss – Barnhart's predicted work absences renders the adequacy of the ALJ's assessment of Barnhart's credibility and RFC suspect, renders the adequacy of his assessment of Mr. Barnhart's credibility suspect, casts doubt upon completeness of the ALJ's hypothetical questions, and erodes the support for his ultimate conclusion at step five. Thus, the Court cannot conclude that the Commissioner's final decision denying Barnhart's applications for benefits is supported by substantial evidence. Accordingly, the Court is compelled to **VACATE** the final decision of the Commissioner and **REMAND** this matter for a new administrative hearing.

The Court need not reach the issues of whether the ALJ properly resolved any conflicts between the VE's testimony and the DOT and accounted for all of Barnhart's credibly established limitations in the hypothetical questions posed to the VE because such arguments are largely dependent upon the reliability of the RFC assessment, which the Court has already found to be suspect. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n. 8 (3d Cir. 2005)("objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself."). This error, if any, may be remedied on remand.

Lastly, for the benefit of the parties on remand, it is unclear whether the requirement that a claimant be permitted to sit or stand "at will" is totally compliant with the strictest interpretation of SSR 96-9p. *See* 1996 WL 374185, at *7. (requiring that the RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing). However, courts have generally found that, even if it is not, the inclusion of such a limitation is harmless error where, as here, nature of the claimant's impairment does not allow for the frequency to be set forth with greater particularity because any change to this limitation would

only *increase* the number of jobs that the claimant could perform. *Hodge v. Barnhart*, 76 F.App'x 797, 800 (9th Cir. 2003)("Even if the ALJ was required to state the frequency that Hodge needed to alternate between sitting and standing, any error was harmless because the VE stated that all the jobs that he identified for Hodge included 'the option to sit or stand' at any time."); *Nesbitt v. Barnhart*, No. 03 C8308, 2004 WL 2092006, at *7(N.D.Ill. Sept. 14, 2004)(holding that where the vocational expert interpreted a "sit/stand option" as permitting a claimant to sit or stand "as often as he would like and for however long he would like," there was no need for the ALJ to specify the frequency and duration of the claimant's need to sit or stand.); *but see*, *Matthews v. Astrue*, No. 09-CV-00051, 2009 WL 3158169, at *7 (D. Colo. Sept. 24, 2009)(suggesting that even a restriction requiring that a claimant have the option to sit or stand "at will" would be insufficiently specific to meet the requirements of SSR 96-9p).[5] Thus, even if a limitation requiring that a claimant be permitted to sit or stand "at will" is viewed as insufficiently specific to comport with a strict reading of SSR 96-9p, on the facts of this case it would not affect the outcome of the ALJ's decision and would not warrant remand. *See e.g.* *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)(finding that remand is not required where it would not affect the outcome of the case).

---

[5] The Court notes that when presented with a similar issue, one district court in this Circuit declined to follow the suggestion in *Matthews* that a limitation requiring that a claimant be permitted to sit or stand "at will" was insufficiently specific to comport with SSR 96-9p. *See Cruz v. Astrue,* No. 09-0508, 2010 WL 3809829, at *7(E.D.Pa. Sept. 28, 2010).

## V.   CONCLUSION

The Court's review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. Therefore, for the foregoing reasons, the Court will vacate the decision of the Commissioner and remand this case for further proceedings pursuant to 42 U.S.C. §405(g).

An appropriate Order shall follow.

Dated: February 24, 2015                                    *s/ Karoline Mehalchick*
                                                            **KAROLINE MEHALCHICK**
                                                            **United States Magistrate Judge**

21